IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **RENEIL DOWNER, M39217,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | |
| ) | |
| **ANTHONY WILLS,** ) | |
| **WEXFORD HEALTH SERVICES,** ) | |
| **NURSE SUZANNE,** ) | Case No. 24-cv-2543-DWD |
| **JANE DOE (NURSE PRACTITIONER),** ) | |
| **FRANK OVALDY,** ) | |
| **C/O POWELL,** ) | |
| **JANE DOE 2,** ) | |
| **JANE DOE 3,** ) | |
| **C/O JAMES,** ) | |
| **JOHN DOE,** ) | |
| ) | |
| **Defendants.** ) | |

# MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiff Reneil Downer, an inmate of the Illinois Department of Corrections (IDOC) currently detained at Menard Correctional Center (Menard), brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. The Court dismissed Plaintiff's initial complaint for multiple reasons, and it denied his accompanying motion for preliminary injunctive relief. Plaintiff has now filed a timely amended complaint (Doc. 11) and a second motion for preliminary injunctive relief (Doc. 12). For reasons explained herein, Plaintiff may proceed on one claim, but his present motion for emergency injunctive relief will be denied.

Plaintiff's Amended Complaint (Doc. 11) is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a)-(b). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## The Amended Complaint

Plaintiff's original complaint was dismissed in part for mis-joining many claims about distinct issues. (Doc. 7). The original complaint contained allegations about Plaintiff's health needs, disciplinary or investigative issues, retaliation, the conditions of his confinement, and more. In the amended complaint, Plaintiff has now limited his assertions to two seizures, ongoing medical issues, and his conditions of confinement. On January 22, 2024, Plaintiff had a seizure and fell from his top bunk, striking his head. (Doc. 11 at 8). It took about 20 minutes for Jane Does 2 and 3 (nurses) to respond to his cell with correctional officers. Plaintiff had a visible head injury, but he was placed in a wheelchair with no neck brace and no supports for his legs. His feet drug on the ground as he was wheeled to the healthcare unit. At the time of his fall, he had a valid bottom bunk permit.

At the healthcare unit, he had to wait an additional ten minutes before the Jane Doe nurse practitioner saw him. Jane Doe saw a one-inch gash on his head and indicated

Plaintiff needed to be seen at the hospital, but she left him sitting and bleeding from his head for another 20-30 minutes. Eventually Defendant James and Defendant John Doe took Plaintiff to the hospital. However, during the transport they did not provide a neck brace and he was forced to lay awkwardly in the vehicle. He argues that prison policy should have called for transportation to the hospital via ambulance. (Doc. 11 at 8).

At the hospital, medical staff advised that they believed Plaintiff may have fractured his neck, which presented concerns about paralysis. Staff instructed Plaintiff not to move and placed him in a neck brace while they attempted to coordinate an airlift to another hospital. Meanwhile, Defendant James contacted Defendant Frank Ovaldy (whom he had been in contact with throughout the day to provide updates) and Ovaldy directed that Plaintiff be secured to four corners despite his condition. (Doc. 11 at 9). Defendants James and John Doe proceeded to stretch out Plaintiff's limbs so that they could shackle him to the stretcher, which he alleges caused unbearable pain. He argues that Ovaldy's actions amounted to deliberate indifference and cruel and unusual punishment. (Doc. 11 at 9).

Plaintiff was ultimately driven from Chester Memorial Hospital to St. Louis University Hospital. (Doc. 11 at 9). At the hospital a doctor asked nurses to cut off Plaintiff's restraints, but Defendant Powell objected. An argument ensued, and ultimately Powell contacted Ovaldy and got approval to remove the handcuffs and shackles. Plaintiff alleges that Powell's actions delayed his access to treatment and amounted to cruel and unusual punishment. (Doc. 11 at 9).

Upon return to Menard, Plaintiff alleges he was "taken hostage" in the healthcare unit. He was initially told that he had to be housed there with his neck brace, but when he asked a sergeant about access to his personal property, he was told that he had to be investigated after expressing a desire to sue over his fall from his bunk. Plaintiff was later issued an investigative status disciplinary report, and he was ultimately kept in the healthcare unit for approximately three weeks. (Doc. 11 at 10).

Plaintiff alleges that "for the following five months [he] sent request slips to healthcare, the CAO, Governor Pritzker, the Department of Justice, etc. etc.. [He] wrote about 30 grievances dealing with [his] injury, still feeling pain in [his] neck, throwing up blood and blacking out." (Doc. 11 at 10). He claims that Defendant Anthony Wills deemed all of his grievances non-emergencies despite the fact that he continues to suffer illness and pain. Plaintiff then goes on to allege that he is being housed in less than adequate conditions, which include smoke in the buildings that has aggravated his asthma and caused his health to deteriorate. (Doc. 11 at 10). He further alleges there is mold, restricted airflow, frigid temperatures and germs. He claims these conditions are cruel and unusual for individuals like himself with chronic health issues. Plaintiff explains that he has been designated as seriously mentally ill (SMI) and that he takes psychotropic medications and seizure medications. He alleges Wills "is acting deliberately indifferent by ignoring a threat to his health and safety after [he] has made him aware through numerous grievances." (Doc. 11 at 11).

On September 15, 2024, Plaintiff suffered a second seizure and was "rushed" to the healthcare unit. (Doc. 11 at 11). He faults Defendant Jane Doe nurse practitioner for

slapping his chest three times and demanding that he wake up. He claims she pulled some of his dreads and tried to revive him with iodine and Narcan to no avail. Plaintiff was ultimately "rushed" to the hospital via ambulance. He alleges Jane Does actions on this occasion amounted to deliberate indifference and cruel and unusual punishment. (Doc. 11 at 11).

Plaintiff alleges that following his second seizure he still has not been seen by a doctor and his seizure medications have not been adjusted. He claims he has not been treated for continuing seizures or "blacking out," and that healthcare staff are intentionally ignoring or dodging his request slips and grievances. He claims that Defendant Nurse Suzanne has insinuated that he "fell out" from smoking, and not from seizures, which he believes jeopardizes his reputation. (Doc. 11 at 11). He alleges that Defendant Wexford has harmed him by having a custom of using "faulty" equipment, such as the wheelchair without leg rests, and that they have a custom of understaffing which frustrates medical staff and causes mistreatment of patients. (Doc. 11 at 12).

In support of the complaint, Plaintiff has attached grievance documents, affidavits from fellow inmates about his first seizure and the living conditions in East Cell house, medical permit documentation, and correspondence with lawyers. He also included his own declaration wherein he stated he is experiencing inadequate medical treatment and inadequate conditions of his housing, as well as mental and emotional anguish. (Doc. 11 at 47-48). He claims that he is severely depressed, but that mental health staff is refusing to abide by his treatment plan. (*Id.* at 48). He further alleges that his asthma is aggravated

by his current conditions, and he has been denied access to showers, exercise, and mental health therapy for the last three months.

In the demand for relief, he seeks a preliminary and permanent injunction "ordering defendant Anthony Wills to fix the inhumane conditions at Menard Correctional Center," and a transfer to a facility capable of addressing his medical issues. (Doc. 11 at 13). In the Second Motion for a Preliminary Injunction, Plaintiff plainly states that he wants to the court to enjoin the defendants from: ignoring the inhumane conditions of confinement in the East cell house and North 2 segregation building; retaliating against him or harassing him; letting his psych medications or medical permits expire; or escaping responsibility for violating his rights. (Doc. 12 at 1-2). He further explains that his medical needs are going untreated and that he continues to be in pain, to black out, and to vomit blood. (Doc. 12 at 2). Plaintiff does not provide any additional factual narrative to support these requests for immediate relief.

Based on the allegations in the Amended Complaint, the Court will designate the following claims:

> **Claim 1:** Eighth Amendment deliberate indifference or cruel and unusual punishment claim against Defendants James, John Doe, Powell, or Ovaldy for the use of shackles and restraints at the hospital after Plaintiff's January 2024 seizure;
>
> **Claim 2:** Eighth Amendment deliberate indifference claim against Defendants Jane Does 2 or 3 or Jane Doe Nurse Practitioner for their handling of Plaintiff's January 2024 or September 2024 seizures;
>
> **Claim 3:** Eighth Amendment deliberate indifference or conditions of confinement claim against Defendant Wills for his

> **handling of Plaintiff's grievances about his medical needs and conditions of confinement;**

The parties and the Court will use this designation in all future pleadings and orders unless otherwise directed by a judicial officer of this Court. Any claim that is mentioned in the Complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pled under *Twombly*. See *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face").

## **Preliminary Dismissals**

Plaintiff faults Wexford Health Services for maintaining a "custom" of faulty equipment such as the wheelchair he was transported in after his January 2024 stroke, and for maintaining a custom of understaffing that promotes the alleged mistreatment of patients. As for the first issue, he has identified a discrete issue with a wheelchair on a single occasion, rather than something that suggests constitutionally infirm custom or practice of the medical contractor at large. See e.g., *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 654 (7th Cir. 2021) (isolated actions or incidents are insufficient to establish a policy or custom as opposed to a random event). As to the second issue, Plaintiff does not clearly tie his theory that understaffing leads to patient mistreatment to his own situation. See e.g., *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 239-40 (7th Cir. 2021) (a plaintiff must show that an unconstitutional policy or practice was the actual moving-force cause behind his own harm, not just that individual employees caused him harm).

Thus, the Court does not find that either conclusory assertion is sufficient to maintain a claim against Wexford.

In the amended complaint, Plaintiff also includes a handful of allegations about his conditions of confinement, such as smoke that exacerbates his asthma, cold temperatures, germs, and filth. While it is certainly possible that some of these issues either alone or in combination could theoretically be enough to make out a conditions of confinement claim, Plaintiff does not attribute these claims to any particular individual. Section 1983 liability premised largely on individual responsibility for discrete wrongdoing. For example, an inmate may allege a guard utilized excessive force when responding to a disturbance at the prison, but an inmate may not generically allege that a prison is a violent and dangerous place. Here, Plaintiff's failure to associate conditions of confinement problems with individual actors is fatal to any such assertions.

Additionally, as the Court previously cautioned, a single lawsuit cannot be used to seek redress for every issue an individual experiences at a prison, and separate problems must be pursued in separate lawsuits. It seems that Plaintiff has largely chosen in the present lawsuit to focus on his two seizures and his need for ongoing seizure related medical care. By contrast, the conditions of confinement allegations are either totally separate from his seizure issues, or are related to distinct medical issues (asthma and mental health). As such, the Court concludes it is also inappropriate for these assertions to proceed within this lawsuit, which is now narrowed to the scope of Plaintiff's seizures and medical needs related to his seizures.

Finally, Plaintiff made generic assertions in his complaint that he still has not received any adjustment to his seizure medication or medical care for other issues such as losing consciousness or vomiting blood, but he does not give basic information such as when these things have occurred, who he has asked for care, or what the outcome has been in these situations. The most specific assertion he has about his ongoing physical condition is an assertion that Defendant Nurse Suzanne damaged his character by suggesting he might have lost consciousness from smoking, rather than from some underlying medical issue. While a statement or assertion like this might be offensive, making an improper or harassing comment is not a constitutional violation. Plaintiff does not describe what medical issue or symptom he had when he presented to Nurse Suzanne, or what context her remark might have been made in, so he has not said enough to establish she acted with deliberate indifference. The generic assertions about Plaintiff's medical state over the last year are insufficient to establish a claim related to his ongoing need for care against Nurse Suzanne or any other unnamed medical provider who was not listed as a defendant in this case.

## Analysis

### Claim 1

Plaintiff alleges that at the hospital medical staff became concerned that he had fractured his neck and was at risk of paralysis, so he was placed in a neck brace and was instructed not to move while they initiated a transfer to another hospital. During this time, he alleges Defendant James contacted Defendant Ovaldy via telephone and relayed Plaintiff's condition. Despite learning of Plaintiff's condition, Ovaldy directed that

Plaintiff be shackled to the four corners of the stretcher, a maneuver which involved painfully stretching his limbs. Defendant John Doe questioned the directive as relayed by James, but the two ultimately complied and shackled Plaintiff. Once at St. Louis University hospital, Defendant Powell resisted the medical staff's directive to remove the restraints, though he ultimately did so after consulting Ovaldy. Plaintiff alleges these actions constituted deliberate indifference and cruel and unusual punishment, and that Powell's actions delayed his access to care.

An Eighth Amendment deliberate indifference claim requires a showing that an official knew of a plaintiff's serious medical condition, but intentionally or recklessly disregarded it. *Hayes v. Snyder*, 546 F.3d 516, 523 (7th Cir. 2008). Additionally, to the extent that Plaintiff suggests he was placed in four-point restraints (shackled naked with all four limbs attached to the corners of his stretcher), the use of mechanical restraints in temporary circumstances might be acceptable, whereas the undiscerning use or overuse of such restraints offends the constitution. *See e.g., French v. Owens*, 777 F.3d 1250, 1253-54 (7th Cir. 1985) (the pervasive use of mechanical restraints for hours or even days at a time was "outmoded and inhuman."). Physical restrictions on one's liberty are an inevitable consequence of imprisonment. But the use of overly restrictive and unnecessary security measures, including physical restraints, can violate the Eighth Amendment's prohibition against cruel and unusual punishment. *Hope v. Pelzer*, 536 U.S. 730, 737 (2002). A conditions-of-confinement claim challenging physical restraints is subject to the familiar deliberate-indifference analysis. *See Gruenberg v. Gempeler*, 697 F.3d 573, 579 (7th Cir. 2012).

First, a plaintiff must show that the physical restraints are severe enough to amount to the deprivation of "the minimal civilized measure of life's necessities." *Gruenberg*, 697 F.3d at 579 (7th Cir. 2012) (*quoting Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008)); *see also Hudson v. McMillian*, 503 U.S. 1, 9 (1992) ("extreme deprivations are required to make out a conditions-of-confinement claim"); *Cunningham v. Eyman*, 17 Fed.Appx. 449, 453 (7th Cir. 2001) (reasoning that shackling an inmate for 16 hours, four to five hours of which were spent in soiled clothing, is not so "extreme" as to satisfy the high threshold of the Eighth Amendment). Second, an inmate must show that the defendant's actions in shackling him amounted to deliberate indifference or a total wanton disregard for his well-being.

Here, Plaintiff alleges that after medical personnel expressed concerns about paralysis and instructed him to remain still, Defendants Ovaldy, James, and John Doe still opted to shackle him to the four corners of his stretcher. At this early stage of the case, it is impossible to determine if this amounted to a total disregard of Plaintiff's well-being and if it was intentional misconduct or negligence. For now, Plaintiff may proceed against Ovaldy, James, and John Doe on the premise that their decision and action to shackle him to the four corners of the bed may have amounted to deliberate indifference.

Plaintiff also alleges that when a doctor and medical staff asked Defendant Powell to remove the shackles, Powell resisted and delayed his care. A delay in treating non-life-threatening but painful conditions may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Arnett v. Webster*, 658 F.3d 742, 753 (7th Cir. 2011) (*citing McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir.

2010)).  The length of delay that is tolerable "'depends on the seriousness of the condition and the ease of providing treatment.'"  *Id.* (*quoting McGowan*, 612 F.3d at 640).  Here, Plaintiff does not say anything about how long Powell's insistence lasted, if Powell knew he was delaying care and causing Plaintiff to suffer, or if any discrete harm resulted from whatever delay might be attributable to Powell's actions.  The bare assertion that Powell delayed care for some unquantified amount of time, and with no discretely identified additional harm, is not sufficient to sustain a claim against Powell as presented.

Thus, Claim 1 may proceed against Defendants James, John Doe and Ovaldy, but not against Defendant Powell.

**Claim 2**

Plaintiff faults Jane Does 2 and 3 for escorting him to the healthcare unit without a neck brace and in a wheelchair that lacked leg rests in January of 2024.  Although the situation he described was not ideal, he does not suggest that these two individuals personally delayed his access to care or acted in blatant disregard to a serious medical need.  Nor does he suggest that he suffered any harm from their conduct.  At most, Plaintiff's allegations against Jane Does 2 and 3 about transporting him in a broken wheelchair suggest negligence, which is not actionable under § 1983.

As for Jane Doe nurse practitioner, Plaintiff alleges he saw her at the healthcare unit after his January 2024 and September 2024 seizures.  In January, he faults her for making him wait ten minutes to be seen and then another 20-30 minutes to be sent out to a hospital while bleeding from a wound on his head.  These delays are trivial in the grand scheme of modern medical care, and he attributes no harm to these brief delays.  In

September of 2024, he faults Jane Doe for hitting his chest three times, pulling on his dreadlocks, and failing to revive him with iodine or Narcan before he was "rushed" to the hospital. While this response might not be a model of best practices, it suggests nothing more than negligence. As such, the Court finds that Claim 2 is insufficient against Jane Doe, Jane Doe 2, and Jane Doe 3.

**Claim 3**

Plaintiff generically faults Defendant Wills for his ongoing access to medical care for his evolving medical issues (ongoing seizures, loss of consciousness, and vomiting blood), and he also faults Wills for inadequate conditions of confinement. He ties Wills' responsibility entirely to the handling of grievances, which he claims have been denied emergency processing. Plaintiff does not describe with any amount of detail, the type of information contained in the grievances, though he suggests he sent them at a high frequency (as many as 30 in the span of five months). In support of the amended complaint, Plaintiff submitted a hodge-podge of grievance documentation about a wide variety of issues, including his medical conditions and his conditions of confinement.

Although the Court reviewed the exhibits attached to the complaint, it does not find that a claim jumps out, nor will it dig endlessly to construct a claim on Plaintiff's behalf. The mere assertion that a grievance was mishandled or did not garner a satisfactory result is not sufficient to state a claim. Prison administrators are entitled to defer to medical staff for medical issues, and to other staff for other aspects of prison operations. *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009) (public officials do not have a free-floating obligation to put things to rights and may delegate issues to

subordinate staff). There is a narrow exception if an inmate can demonstrate that a highly detailed grievance reached an administrator and the administrator failed to investigate serious allegations contained therein, but Plaintiff has not made such a showing here with his allegations in the amended complaint or his grievance exhibits[1]. *See e.g., Perez v. Fenoglio, 792 F.3d 768, 782 (7th Cir. 2015)* (officials may be liable where they received highly detailed grievances and other correspondence but failed to investigate). To the contrary, Plaintiff's complaint remains rather vague about the issues he attributes to Wills and the grievances attached as exhibits do not help to further illuminate the issue. The grievances submitted as exhibits were not highly detailed about Plaintiff's medical needs, and each one spoke about entirely distinct issues, rather than appearing to notify Wills on multiple occasions of a persistent issue. The grievance exhibits give the impression Plaintiff may have repeatedly sought Wills' attention, but frequently for differing issues, such that no one thing might have stood out. On the facts alleged and the exhibits presented, the Court does not find that Plaintiff has described any conduct by Defendant Wills sufficient to fault him personally for deliberate indifference to Plaintiff's medical needs, or for maintaining conditions of confinement so constitutionally infirm that

---

[1] In a January 23, 2024, grievance Plaintiff complained about his access to his personal property, his placement in the healthcare unit, possible retaliation, and his ability to contact his lawyer or family, but he did not say anything about his physical state or the physical conditions of his confinement. (Doc. 11 at 26-27). In a July 30, 2024, grievance he claims that his mental health is deteriorating due to the conditions of confinement, and then he goes on to complain about garbage and dirty laundry on the gallery. He also complains about his need to refill his inhaler for asthma. (Doc. 11 at 40-41). Additional grievance receipts and responses from the prison administration suggest that many additional grievances were filed, but without copies or factual allegations in the complaint, the Court cannot tell if those grievances were related to ongoing seizure issues described in the complaint or what conditions of confinement those grievances may have discussed.

Plaintiff has been harmed. Claim 3 will be dismissed as insufficient for failure to state a claim.

## Second Motion for a Preliminary Injunction (Doc. 12)

As for Plaintiff's Second Motion for a Preliminary Injunction or Temporary Restraining Order (Doc. 12), it will now be denied without prejudice for multiple reasons. To seek a preliminary injunction, a plaintiff must establish: a likelihood of success on the merits of his claim; no adequate remedy at law; and, irreparable harm without the injunctive relief. *See Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020). As for the first requirement, the Court must determine whether "plaintiff has any likelihood of success—in other words, a greater than negligible chance of winning." *AM General Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 804 (7th Cir. 2002). The Court must also decide whether an adequate remedy at law exists and whether the plaintiff will suffer irreparable harm without injunctive relief. Irreparable harm is harm which cannot be repaired. *Graham v. Med. Mut. Of Ohio*, 130 F.3d 293, 296 (7th Cir. 1998) ("Irreparable harm is harm which cannot be repaired, retrieved, put down again, atoned for. The injury must be of a particular nature, so that compensation in money cannot atone for it."). The Court must then weigh "the balance of harm to the parties if the injunction is granted or denied and also evaluate the effect of an injunction on the public interest." *Id.*; *Korte v. Sebelius*, 735 F.3d 654, 665 (7th Cir. 2013). "This equitable balancing proceeds on a sliding-scale analysis; the greater the likelihood of success of the merits, the less heavily the balance of harms must tip in the moving party's favor." *Korte*, 735 F.3d at 665.

First, as to the aspects of injunctive relief that Plaintiff seeks that are unrelated to the sole claim that will proceed (Claim 1, deliberate indifference concerning the use of shackles at the hospital in January 2024), any such relief must be denied because a Court cannot grant injunctive relief unrelated to the operative claims. Plaintiff seeks relief from the conditions of confinement, harassment or retaliation, and a transfer to another prison—all things unrelated to the operative claim. Second, to the extent Plaintiff seeks relief for medical conditions other than any seizure related issue, relief is inappropriate. Third, even if Plaintiff seeks injunctive relief in the form of care for ongoing seizure problems, this is still not related to the claim about the use of shackles that has been allowed to proceed.

As to the state of Plaintiff's ongoing care, he simply has not provided enough information about the current state of affairs to warrant emergency court intervention, nor has he even provided enough information about this issue to proceed on a claim in the lawsuit. He has not given any detail about his interactions with medical staff or prison staff he sees on a regular basis from whom he seeks medical care. All he has done is to fault Defendant Anthony Wills for the handling of emergency grievances about many issues, but this was not sufficient to support a claim and it is too ambiguous to support narrowly tailored injunctive relief. Thus, Plaintiff's Second Motion for a Preliminary Injunction (Doc. 12) is **DENIED** without prejudice.

## Disposition

**IT IS HEREBY ORDERED THAT Claim 1** of the Complaint (Doc. 1) survives initial screening as described above against Defendants James, Ovaldy, and John Doe. By

contrast, **Claims 2-3** are insufficient to state a claim.  Plaintiff has failed to state a sufficient claim against Defendants Anthony Wills, Wexford Health Services, Nurse Suzanne, Jane Doe (nurse practitioner), Jane Doe 2, and Jane Doe 3.  The Clerk of Court is **DIRECTED** to **TERMINATE** Wexford, Nurse Suzanne, Jane Doe (nurse practitioner) and Jane Does 2 and 3.  <u>Anthony Wills shall remain a party solely in official capacity to assist with the identification of John Doe</u>.

The Clerk of Court is **DIRECTED** to prepare for Defendants James, Frank Ovaldy, and Anthony Wills (official capacity only): (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the Amended Complaint (Doc. 11), and this Memorandum and Order to Defendants' place of employment as identified by Plaintiff.  If Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk.  Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merits Review Order.  However, the Warden need not file an answer because he or she has been added solely because Plaintiff seeks eventual injunctive relief.**

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* was granted.  *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that he is under a continuing obligation to inform the Clerk of Court and each opposing party of any address changes; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than 7 days after a transfer or other change of address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for failure to prosecute.  Fed. R. Civ. P. 41(b).

Based on the allegations in the Complaint, the Clerk of Court is **DIRECTED** to enter the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

**Plaintiff shall have 21 days to file a notice** with the Court describing John Doe.  Failure to do so may result in the dismissal of this Defendant for failure to prosecute.  A

deadline will then be set for Anthony Wills to review Plaintiff's notice and to provide responsive information.

Plaintiff's Second Motion for a Preliminary Injunction (Doc. 12) is **DENIED** without prejudice.

**IT IS SO ORDERED.**

Dated: January 7, 2025                              /s *David W. Dugan*

                                                              _____
                                                              DAVID W. DUGAN
                                                              United States District Judge


**Notice to Plaintiff**

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least 60 days from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take 90 days or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.

The Court wishes to remind the Plaintiff that litigation is often viewed a series of hurdles that the Plaintiff must clear to get to another hurdle. Initial screening is such a hurdle, but it is a very low one for the Plaintiff to clear. As noted above, surviving initial screening only requires the bare statement of a claim that, if proven, could entitle Plaintiff to some relief. At trial, he will need to prove by a preponderance of evidence that the facts alleged actually occurred and that those facts satisfy the legal requirements for recovery. Trial is the highest and most difficult of hurdles for any Plaintiff to clear.